IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL KLINE, SOSTENO KLINE
and FELA KLINE,

                Plaintiffs,

vs.                                                Civ. No.  07-904 JH/LFG

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

                Defendant.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on *Defendant's Motion for Summary Judgment* [Doc. No. 32]. The issue presented by the motion is whether Plaintiff Michael Kline primarily resided with his parents, Plaintiffs Sosteno and Fela Kline, at the time of his accident such that he meets the definition of an "insured" who may obtain uninsured motorist ("UM") coverage under three automobile accident policies issued to them by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). While State Farm argues that the undisputed material facts show that Michael Kline's primary residence was elsewhere, Plaintiffs contend that the applicable policy language is ambiguous and creates a fact issue for trial, and that Plaintiffs had a reasonable expectation of coverage. After reviewing the briefs, the evidence, and the applicable law, the Court concludes that State Farm's motion for summary judgment should be granted.

## FACTUAL BACKGROUND

Viewed in the light most favorable to the Plaintiffs, the facts as presented in the record

presently before the Court are as follows.[1]

Plaintiffs Sosteno and Fela Kline reside at 3434 Morningside Drive. On August 30, 2005, their son, Plaintiff Michael Kline, was injured in a motorcycle accident. He was the named insured in three automobile policies issued by State Farm, each of which contained UM coverage of $25,000 per person and $50,000 per accident. Michael sued the other driver and received a settlement of $85,000, which offset the total UM coverage of $75,000 available to him under his three policies. He now seeks UM coverage under three policies issued by State Farm to his parents on their vehicles. Michael was not listed as a driver on any of his parents' three policies, nor was he rated in calculating any of the three premiums. The policies all state that State Farm will pay UM damages to an insured, defined as:

> 1. the first person named in the declarations;
> 2. his or her husband or wife who, at the time of the loss, resides primarily with the first person named in the declarations;
> 3. a person related to an insured under 1 or 2 above by blood, marriage or adoption who, *at the time of the loss, resides primarily* with the first person named in the declarations; . . .

(emphasis added). The parties agree that the issue is whether Michael fits under Paragraph 3 above—that is, whether on August 30, 2005, he was residing primarily with Sosteno and Fela at 3434 Morningside Drive.

In addition to the home at 3434 Morningside, Sosteno and Fela own another home located at 7308 Old Aspen. In 1997, Michael began living in his parents' home at 3434 Morningside, and then he moved to 7308 Old Aspen in approximately 1999 or 2000. His name was not on the

---

[1] The Court notes that counsel for both Plaintiffs and Defendant have violated Rule 5.2(a) of the Federal Rules of Civil Procedure by filing documents containing unredacted personal information, including date of birth and social security number. The Court cautions counsel to be more circumspect with personal information in the future.

mortgage for the Old Aspen home, nor did he have a formal leasing agreement as a tenant. Rather, they had an informal arrangement under which Michael paid the mortgage for the home on Old Aspen when he could, and his parents paid the mortgage when he was unable to do so.

At the time of the accident in 2005, Michael was raising three school age children, of whom he had sole custody. In August of 2005, prior to his accident, Michael registered his children for school in the school district that encompassed 7308 Old Aspen and listed 7308 Old Aspen as their address. He also received bills for utilities and cable television in his name at 7308 Old Aspen, though Michael's bills for insurance on his vehicles were mailed to 3434 Morningside. As was their practice, during the school year Michael and his children stayed during the week at 7308 Old Aspen. However, on the weekends during the school year they all stayed at 3434 Morningside with Sosteno and Fela. During summer vacations, Michael stayed primarily at 3434 Morningside, returning to 7308 Old Aspen occasionally on weekends to perform maintenance on the home. The 2005-2006 school year began on August 11, 2005, just two and a half weeks before the accident.

On August 17, 2005, Michael and his children moved into 3434 Morningside Drive to housesit for his parents while they went out of state for a wedding. It was his intent to return to the house on Old Aspen when they returned. Michael and his children remained at the home on Morningside Drive until the accident on August 30. Sosteno and Fela were still out of town on that date. After the accident occurred, Michael told the investigating officer that he lived at 7308 Old Aspen, and that is the address the officer noted on his police report.

## **DISCUSSION**

In their Amended Complaint, the Plaintiffs call upon the Court to enter a judgment declaring that Michael is entitled to UM coverage under his parents' three insurance policies issued by State Farm. That, in turn, requires a finding that Michael is an insured under those policies—that is, that

3

on August 30, 2005, he was residing primarily with Sosteno and Fela at 3434 Morningside.  In its motion for summary judgment, State Farm argues that it is entitled to summary judgment because the undisputed material facts show that at the time of the accident Michael's primary residence was at 7308 Old Aspen, and therefore he is not an "insured" under the plain language of the policies. In response, Plaintiffs argue that the Court should not enter summary judgment because the policy language is unclear and ambiguous.  They contend that the policies do not "define primary residency as an exclusive residence, nor do they set forth minimum residency restrictions.  The circumstances of this case reveal this lapse to create an ambiguity."  Doc. No. 36 at p. 8.  According to Plaintiffs, the fact that at the time of the accident Michael and his children kept personal belongings, clothing, toiletries, and documents at his parents' home, that he and his children were staying there, and that he received mail regarding insurance there weighs in favor of coverage in the absence of specific contractual language declaring these facts to be insufficient to establish primary residence.

In this case, the material facts are not in dispute.  There are no competing versions of events or credibility issues to be resolved by a jury.  Rather, the question is whether the undisputed facts are sufficient to establish, as a matter of law, Michael's primary residence on August 30, 2005.  New Mexico law must guide the Court in construing the policy language at issue.  In *City of Santa Rosa v. Twin City Fire Ins. Co.*, 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196, the New Mexico Court of Appeals described the proper standard of review the court should use to construe an insurance policy:

> When the terms used have a common and ordinary meaning, that meaning controls in determining the intent of the parties.  Insurance contracts are not interpreted based on a subjective view of the coverage, but on the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured.  In determining whether an insurance policy provision is ambiguous, we consider whether the language is susceptible to more than one meaning, whether the structure of the contract is illogical, and whether a particular matter of coverage is not

4

>explicitly addressed by the policy. We will not create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations. When a policy contains clear and unambiguous language, the duty of the reviewing court is to enforce that language as written as an expression of the intent of the parties.

Finally, the fact that a policy does not define certain terms does not necessarily render it ambiguous. Instead, the terms may be given their usual and ordinary meanings with help from a dictionary. *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24.

In this case, the Court concludes that the language of the policy is not ambiguous. Rather, it clearly provides that UM coverage applies to Michael if, on August 30, 2005, his primary residence was 3434 Morningside Drive. The common and ordinary meanings of the words "reside" and "primary" are not in dispute. Black's Law Dictionary defines "primary" as "[f]irst; principal; chief; leading. First in order of time, or development, or in intention," while it defines "reside" as "[l]ive, dwell, abide, sojourn, stay, remain, lodge. To settle oneself of a thing in a place, to be stations, to remain or stay, to dwell permanently or continuously . . ." (6th ed. 1991). The fact that Michael may have resided in two places on August 30, 2005 does not render the policy language ambiguous, because only one residence can be "primary."   The Court agrees with the persuasive reasoning of several other courts around the nation that have examined the same State Farm policy language and have concluded that the phrase "resides primarily" is not ambiguous and that one can have only one primary residence at any given time. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Harris*, 882 So. 2d 849, 854 (Ala. 2003); *Haydel v. State Farm Ins. Co.*, 935 So. 2d 171, 174 (La. Ct. App. 2006); *State Farm Mut. Auto. Ins. Co. v. Colon*, 880 So. 2d 782, 783-84 (Fla. Ct. App. 2004); *State Farm Mut. Auto. Ins. Co. v. Fultz*, Civil Action No. 2:06cv15, 2007 WL 2789461 at *4 (N.D.W. Va. Sept. 24, 2007) (unpublished); *Drexler v. Phoenix Ins. Co.*, 2006 WL 581015 *3-*4 (W.D. Ky. March 3, 2006) (unpublished). The Court finds that the policy language is clear and is

not susceptible to different meanings.

Applying that reasoning to this case, the Court concludes that at the time of the August 30, 2005 accident, Michael's primary residence was at 7308 Old Aspen. It is undisputed that the school year had begun and that it was his practice during the school year to live during the week at 7308 Old Aspen, spending only weekends at 3434 Morningside. It is also undisputed that Michael paid the mortgage at Old Aspen when he could, that he received utility and phone bills in his name there, that he used the Old Aspen address to register his children for school, and that on the day of the accident he told the investigating officer that he lived at 7308 Old Aspen. Finally, it is undisputed that on the day of the accident Michael was staying at 3434 Morningside in order to housesit for his parents, and that it was his intention to return to 7308 Old Aspen when they got home. While the evidence suggests that Michael also resided at 3434 Morningside on a part-time basis, the Court concludes that under the current record on August 30, 2005 his primary residence was at 7308 Old Aspen. Though Plaintiffs argue that their expectations should guide the Court's decision, that is not the case where, as here, the Court has found the controlling policy language to be clear and unambiguous. "When a court interprets the terms of an insurance policy that is unclear and ambiguous, the reasonable expectations of the insured guide the analysis. However, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written." *Truck Ins. Exch. v. Gagnon*, 2001-NMCA-092, ¶ 7, 131 N.M. 151, 33 P.3d 901 (citation omitted).

Finally, Plaintiffs argue that the "dynamics of the insurance transaction" lead them to reasonably expect UM coverage for Michael, despite the applicable policy language. *See Rehders v. Allstate Ins. Co.*, 2006-NMCA-058, ¶ 33, 139 N.M. 536. They present evidence that Michael obtained policies for his vehicles prior to 1997, when he was not living at 3434 Morningside. According to Sosteno's deposition testimony, their State Farm insurance agent, now deceased,

6

allowed Michael to use the Morningside address on policies for his motorcycle and truck so that he could get the multi-policy discount, even though the agent knew Michael did not live at the Morningside address at that time.  Thus, they claim that this insurance transaction created a reasonable expectation of UM coverage for Michael under Sosteno and Fela's policies.  The Court disagrees.  There is no evidence that one must "reside primarily" at the same address in order to receive the multi-policy discount or that the agent represented to Plaintiffs that using the Morningside address to obtain the discount would provide Michael with UM coverage.  The agent apparently agreed to write down Michael's address at 3434 Morningside for purposes of applying the multi-policy discount and mailing insurance documents, but that does not transform 3434 Morningside into Michael's primary residence or eliminate the primary residence requirement clearly laid out in the policy documents and provided to Plaintiffs.  In short, State Farm is entitled to summary judgment on UM coverage.

     **IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. No. 32] is **GRANTED**.

 

                                                           **UNITED STATES DISTRICT JUDGE**